UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOY MCCOLLEY, <br><br> Plaintiff, <br><br> v. <br><br> CASEY'S GENERAL STORES, INC., <br><br> Defendant. | CAUSE NO. 2:18-CV-72 DRL-JEM |

OPINION AND ORDER

Joy McColley alleges that Casey's General Store, Inc. violated the Fair Labor Standards Act by failing to pay overtime wages for her work in excess of forty hours per week. She now seeks conditional certification under 29 U.S.C. § 216(b) for one proposed class. The court grants the motion for conditional certification but denies the motion for equitable tolling as premature.

FACTUAL BACKGROUND

After the parties completed discovery on the issue of class certification and Ms. McColley filed this request for conditional certification, reassignment brought the pending motions to this presiding judge on January 25, 2021. The court held oral argument on March 9, 2021. The following facts emerge from the amended complaint and evidence submitted by the parties.

Casey's General Store, an Iowa corporation, and its wholly-owned subsidiaries, Casey's Marketing Company and Casey's Retail Company, operate over 2,000 convenience stores across the United States, including the Casey's store in which Joy McColley worked in Griffith, Indiana [ECF 25 ¶¶ 16, 18]. Ms. McColley was a store manager at Casey's from approximately February 2014 to January 2017 [ECF 25 ¶ 10]. As a store manager, she was classified as exempt from FLSA's overtime provision. She regularly worked over 40 hours per workweek [ECF 25 ¶¶ 3, 12].

The nature of a store manager's duties ranged from manual, "associate-type" duties like customer service, preparing food, taking orders, stocking shelves, and cleaning the store [ECF 25 ¶ 30], to more managerial duties including gas price setting, screening candidates, training associates, firing associates, enforcing store policies, and preparing work schedules [*see, e.g.*, ECF 77-2, Ex. 5 ¶¶ 10-39]. Ms. McColley claims that, despite her title of manager, she and the other potential collective action members performed primarily manual, "associate-type" duties in excess of 40 hours a workweek, and that these duties did not involve the exercise of discretion or independent judgment "regarding matters of significance" [ECF 25 ¶¶ 12, 31-33]. Ms. McColley also claims these manual duties occupied a majority of her work, for which she was not paid overtime, and were at the direction and with the knowledge of Casey's, which intentionally underfunded the store's payroll to avoid hiring more non-exempt associates eligible for overtime pay [ECF 25 ¶¶ 28-38].

From February 16, 2015 to today, Ms. McColley claims that Casey's practice of failing to pay overtime for hours worked by managers, who are classified as exempt employees, for completing primarily non-managerial duties constitutes a knowing and willful violation of FLSA. She accordingly requests this case be conditionally certified under 29 U.S.C. § 216(b) and the statute of limitations to be tolled for potential class members.

## DISCUSSION

A. *Conditional Certification is Appropriate.*

FLSA allows an employee to sue for unpaid overtime compensation through a collective action with other "similarly situated" employees. 29 U.S.C. § 216(b); *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). A collective action is similar to, but distinct from, a class action under Federal Rule of Civil Procedure 23. A typical class action includes all putative plaintiffs that meet the class's definition unless they opt out, whereas plaintiffs who want to become part of a collective action must affirmatively opt-in. *See Alvarez*, 605 F.3d at 448; *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d

770, 771 (7th Cir. 2013). FLSA says as much: "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

The court has discretion to facilitate notice of a conditional collective action to those "similarly situated" to the named plaintiff, here Ms. McColley. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989). "The twin goals of collective actions are enforcement and efficiency: enforcement of the FLSA, by preventing violations of the overtime-pay requirements and by enabling employees to pool resources when seeking redress for violations; and efficiency in the resolution of disputes, by resolving in a single action common issues arising from the same alleged illegal activity." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). FLSA fosters these goals by permitting collective actions for similarly situated employees. *See id.*

At the same time, the court "must be scrupulous to respect judicial neutrality," avoiding even the appearance of endorsing the action's merits. *Hoffmann-La Roche*, 493 U.S. at 174. Collective actions present certain risks too—restructuring litigation leverage and increasing pressure to settle, no matter the action's merits, and soliciting claims in a manner that differs from the court's role of facilitating notice for case management purposes, *see id.*, appreciating that efficiency may mean weeding out those who opt into the suit later if this isn't done at the expense of neutrality or abuse of an improper collective action notice, *Bigger*, 947 F.3d at 1050.

Though FLSA leaves "similarly situated" undefined, most courts, and indeed courts in this circuit, take a dual approach in determining whether other employees are similarly situated to the plaintiff. At the first step, often before discovery, the plaintiff has the burden to submit affidavits or other evidence to make a "modest showing" that she is "similarly situated" to other employees. *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 224 (3d Cir. 2016); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Sagendorf v. Quality Huts, LLC*, 2019 U.S. Dist. LEXIS 52739, 5-6 (N.D. Ind.

3

Mar. 28, 2019). *Dominguez v. Don Pedro Rest.*, 2007 U.S. Dist. LEXIS 6659, 4-5 (N.D. Ind. Jan. 25, 2007). The second step occurs after discovery—permitting the defendant to seek decertification of the class when the law holds the class to a more stringent standard. *See Espenscheid*, 705 F.3d at 772; *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 8.

Today the court must determine whether to certify the class conditionally—the first step. A plaintiff cannot meet her burden merely with the complaint's allegations. *See Myers*, 624 F.3d at 555; *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 8; *cf. Bell v. PNC Bank, N.A.*, 800 F.3d 360, 377 (7th Cir. 2015) (analyzing allegations under Rule 23) ("This does not mean, however, that on issues affecting class certification, a court must simply assume the truth of the matters as asserted by the plaintiff."). After discovery has been conducted on the issue of conditional certification, courts generally apply more scrutiny to the plaintiff's claims. *See Boelk v. AT&T Teleholdings, Inc.*, 2013 U.S. Dist. LEXIS 20606, 40 (W.D. Wis. Jan. 10, 2013); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (applying "intermediate level of scrutiny" to conditional certification when substantial fact discovery had been conducted); *Scott v. Now Courier, Inc.*, 2012 U.S. Dist. LEXIS 43710, 24 (S.D. Ind. Mar. 29, 2012) (same). This sliding scale, what some courts call a "modest plus" showing, recognizes that the plaintiff has benefitted from some discovery to present a case of similarly situated employees.

The court has researched deeply the origins of the "modest" and "modest plus" standards but thus far has not found or been presented with a case that defines them. When asked at oral argument to define them, one counsel described the burden merely as "enough" evidence—not entirely helpful to the exercise of the court's power to conditionally certify a case. For some time, courts have called it a "modest factual showing" that is "sufficient" to demonstrate similarly situated class members or a common policy or plan that violated the law, but seemingly—to the extent research has revealed—without defining what "modest" precisely means, or for that matter what "modest plus" means.

Federal courts are accustomed to assessing evidence against defined standards. Evidence has defined rules governing admissibility. The law defines standards of review. Burdens of proof nearly always come with definition too—whether that be a preponderance of the evidence, or clear and convincing evidence, for examples. Even constitutional questions are weighed against defined standards too—probable cause, intermediate scrutiny, strict scrutiny, and many other standards all benefit from explanations of what they mean so that the task of assessing evidence becomes more than just reflexive but an exercise of the court's discretion within this process. Certain federal courts have called "modest" a "low standard" that cannot be satisfied just by unsupported assertions and speculation, *see, e.g., Myers*, 624 F.3d at 555, but by something that shows a "factual nexus" or sufficient showing of similarly situated employees, *see Halle*, 842 F.3d at 224.

Lurking in the background is the question of whether all this is really needed at step one. Our circuit has mused, albeit in the course of reviewing the decertification step, that "despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Espenscheid*, 705 F.3d at 772 (citation omitted). To achieve class certification under Rule 23, a putative class plaintiff must make her showing by a preponderance of the evidence. *See Howard v. Cook Cty. Sheriff's Office*, 2021 U.S. App. LEXIS 6389, 16 (7th Cir. Mar 4, 2021). Given the goals of enforcement and efficiency, and yet the risks to neutrality and case leverage, *see Bigger*, 947 F.3d at 1049, one might wonder whether a "modest" showing—however one might define it—really is enough or frankly really reflects what courts are doing. One federal circuit just two months ago, though in the face of an arbitrability question, provided a "workable, gatekeeping framework" that required district courts to

"rigorously scrutinize" the issue instead and rejected the modest approach. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 433-34 (5th Cir. 2021).

The FLSA certification two-step remains the dance of this circuit—as least for the time being—and the court adheres to it. *See Bigger*, 947 F.3d at 1049-52 (notice); *Espenscheid*, 705 F.3d at 772 (decertification). But that's a different subject than what standard applies at step one. No one today argues for a different standard for step one, at least with any definition; and the court, even if it applied a higher standard than "modest" or "modest plus"—say even a preponderance of the evidence standard—would nonetheless reach the same conclusion it does today: that this action should be conditionally certified.

Although discovery commenced on May 24, 2018 [ECF 34], almost six months before Ms. McColley moved for conditional certification, the court bifurcated discovery to address the certification issue first [ECF 40]. This discovery allowed Ms. McColley to develop a more complete record of the certification issue. *See Boelk*, 2013 U.S. Dist. LEXIS 20606 at 39-40. At the time of her motion for notice and conditional certification, Ms. McColley collected opt-in consents from 34 potential plaintiffs. Discovery was well spent; the parties filed numerous affidavits from current and former Casey's employees, numerous exhibits related to Casey's policies and managerial duties, and deposition transcripts related to the issues of a manager's duties.

To support conditional certification, Ms. McColley must present a factual showing that is "sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ahad v. Bd. of Trs. of S. Ill. Univ.*, 2017 U.S. Dist. LEXIS 160584, 3 (C.D. Ill. Sept. 28, 2017) (quoting *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014)). That may take the form of affidavits or other evidence beyond mere allegations. *See id.* at 4 (citing *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp.2d 745, 751 (N.D. Ill. 2011)); *Hayes v. Thor Motor Coach*, __ F. Supp.3d __, 2020 U.S. Dist. LEXIS 158555, 7 (N.D. Ind. Sept. 1, 2020). "This

6

evidence must demonstrate a factual nexus that binds the plaintiffs together as victims of a particular violation of the FLSA, although a unified policy, plan, or scheme . . . is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus." *Ahad*, 2017 U.S. Dist. LEXIS 160584 at 3 (internal quotation marks omitted).

Ms. McColley proposes conditionally certifying one collective action under FLSA: all store managers who worked for Casey's throughout the United States at any time on or after February 16, 2015. Accordingly, she bears the burden of demonstrating that these potential class members are similarly situated to her in light of the framed FLSA violation. *See Vazquez v. Ferrara Candy Co.,* 2016 U.S. Dist. LEXIS 110554, 10 (N.D. Ill. Aug. 19, 2016).

To support the conclusion that these potential plaintiffs are similarly situated, Ms. McColley submitted declarations of ten[1] former store managers; deposition testimony from Casey's corporate representatives, Mr. Robert Ford (Vice President of Store Operations) and Ms. Cindi Summers (Senior Vice President of Human Resources); the indices from Casey's Work Station, Food Service, Forms, and Building the Team manuals; and human resource guides and articles describing policies related to Casey's compensation, planograms, promotions, and prices [ECF 65-1].

These materials detail how store managers frequently worked more than 40 hours in a workweek, a vast majority constituting "associate type" manual labor such as stocking shelves, cleaning the store, and doing customer service for which they were not paid overtime [ECF 65-2 to ECF 65-11, Ex. A ¶ 7; Ex. B ¶ 8; Ex. C ¶ 6; Ex. D ¶ 7, Ex. E ¶ 6; Ex. F ¶ 9; Ex. G ¶ 7; Ex. H ¶ 12; Ex. L ¶ 12; Ex. M ¶ 5]. The declarations suggest this work occupied between 90-95 percent of the managers' time. *Id.* The declarations further state that this associate-type work did not involve setting policies and procedures for the store, setting store goals, or developing Casey's product and service offerings

---

[1] Ms. McColley intended to submit thirteen declarations, but it appears the record lacks Exhibits I, J, and K.

because these managerial-type duties were performed by Casey's corporate employees [ECF 65-2 to ECF 65-11, Ex. A ¶ 12; Ex. B ¶ 12; Ex. C ¶ 10; Ex. D ¶ 7, Ex. E ¶ 9; Ex. F ¶ 14; Ex. G ¶ 8; Ex. H ¶ 16; Ex. L ¶ 13; Ex. M ¶ 7] and any incidental managerial duties were directed and controlled by area managers [ECF 65-2 to ECF 65-11, Ex. A ¶ 13; Ex. B ¶ 13; Ex. C ¶ 11; Ex. D ¶ 12, Ex. E ¶ 10; Ex. F ¶ 14; Ex. G ¶ 12; Ex. H ¶ 17; Ex. L ¶ 17; Ex. M ¶ 10]. Further, Casey's own corporate representative acknowledged in his deposition that all store managers have essentially the same duties, which include the associate-type tasks of changing the creamer in the coffee area, sweeping and mopping the floors, hanging signs, washing windows, changing price tags, stocking groceries, operating the dough roller, operating the wet vacuum, serving customers, and occasionally working the cash register and cleaning the stores [ECF 77-2 at 70-74].

The court concludes that these declarations and exhibits contain sufficient evidence of substantial similarity among the potential class members. The declarations establish that the potential class members: (1) worked for Casey's as salaried store managers; (2) regularly worked in excess of 40 hours per week; (3) were not paid extra overtime compensation for any hours worked in excess of 40 per week; and (4) primarily performed non-managerial tasks. The record thus establishes that Ms. McColley and the potential class members, at least for the purpose of conditional certification, were subject to a common policy or plan—namely the alleged misclassification of managers as exempt employees despite allegedly performing primarily non-exempt tasks—with the common injury of lost overtime pay.

Casey's argues that Ms. McColley has not met her burden because she failed to identify a common illegal "*de facto*" policy and because these claims should not be managed in a collective action. Both arguments are unpersuasive.[2]

---

[2] Casey's also argues that Ms. McColley's duties were primarily managerial; but at this stage, the court won't decide substantive issues on the merits of the FLSA allegation. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp.2d

Casey's claims that Ms. McColley must present either a facially illegal policy or significant evidence of a *de facto* illegal policy to be eligible for certification. To support this legal proposition, Casey's cites *Allen v. Payday Loan Store of Ind., Inc.*, 2013 U.S. Dist. LEXIS 169971, 23-24 (N.D. Ind. Dec, 3, 2013). There, the court noted that the term "similarly situated . . . require[s] nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Id.* at 23 (internal quotation omitted). Vague references and statements of plaintiffs being required to do "a variety of tasks off the clock," without any evidence of which employee was required to do what task when, and no evidence of a single decision, policy, or plan, did not constitute a "substantial allegation" there. *Id.* at 23-24.

The circumstances here are clearly distinguishable. Ms. McColley has provided ample evidence, and not just scant assertions, of the nature of the associate-type work performed by store managers and their hours in ten declarations. Further, Ms. McColley presented a corporate representative's own statements about the nature of the duties of a store manager, which include both managerial and associate-type work, and that the duties were the same across all stores. This evidence constitutes substantial proof—indeed, enough to meet a "modest" showing and even to make the finding of conditional certification by a preponderance at this stage, appreciating that more discovery will come.

Next, Casey's argues that the court should decline to conditionally certify this class because liability is dependent on an individual determination of each employee's duties. Casey's cites to *Reich v. Homier Distrib. Co.*, 362 F. Supp.2d 1009, 1013-14 (N.D. Ind. 2005), in which the court concluded that there can be no certification when all potential plaintiffs have the same position but different job

---

852, 855-56 (N.D. Ill. June 11, 2013); *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 433 (S.D. Ill. 2012); *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 9.

duties. However, unlike *Reich*, Casey's representative explicitly acknowledged that all store managers have the same primary job duties, regardless of where they work [ECF 77-2 at 12]. And these job duties, according to McColley's declarations and the testimony of Casey's representative, included various associate-type tasks.

Finally, Casey's has collected many declarations from current employees and area managers to refute Ms. McColley's declarations. This reliance on so called "happy camper" declarations is largely misplaced when the court analyzes certification under step one. *See Piazza v. New Ablertsons, LP*, 2021 U.S. Dist. LEXIS 20573, 18 (N.D. Ill. Feb. 3, 2021) (defendant affidavits are "quintessential examples of 'happy camper' declarations . . . the Court need not consider . . . at this stage in the litigation"); *Briggs v. PNC Fin. Servs. Grp.*, 2016 U.S. Dist. LEXIS 33703, 18-19 (N.D. Ill Mar. 16, 2016) (defendant's declarations "are futile in the Court's step one analysis"); *Salmans v. Byron Udell & Assocs.*, 2013 U.S. Dist. LEXIS 28073, 4 (N.D Ill. Feb. 26, 2013) ("[W]hether . . . discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification.") (citation omitted); *Petersen v. Marsh USA, Inc.*, 2010 U.S. Dist. LEXIS 136519, 12-13 (N.D. Ill. Dec. 23, 2010) ("[T]he rigorous comparison of day-to-day job responsibilities urged by defendants is inappropriate at the conditional certification stage."). Resolving the merits is for another time. These declarations don't preclude conditional certification.

Ms. McColley has presented facts "sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law," *Ahad*, 2017 U.S. Dist. LEXIS 160584 at 3. This is true whether the court assesses the evidence presented under the amorphous "enough" standard urged by Ms. McColley, the roughly sketched "modest" or "modest plus" standards, or indeed the preponderance standard used in Rule 23 proceedings. Accordingly, the court conditionally certifies the following class: all current and former Casey's store managers throughout

the United States who are or were classified as exempt store managers during the Collective Action Period.

      B.  *Equitable Tolling is Premature.*

Ms. McColley asks the court to equitably toll the statute of limitations on potential plaintiffs' claims from November 16, 2018 (the date that Ms. McColley filed her motion for notice and conditional certification) to the date that the issue of conditional certification and notice are resolved. Casey's responds by contesting standing and arguing that such an extraordinary remedy is inappropriate and unwarranted.

For FLSA claims, the statute of limitations is two years (or three years when the cause arises out of willfulness). 29 U.S.C. § 255(a). Though an extraordinary remedy is rarely granted, *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016), a court may equitably toll the statute of limitations, thereby allowing "a plaintiff [to] sue after the expiration of the limitations period . . . if [the plaintiff] had a good reason for [her] delay in suing and has suffered a harm greater than the defendant suffered or is likely to suffer as a result of being sued after the limitations period expired," *Knauf Insulation, Inc. v. S. Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016). Equitable tolling is appropriate when a punitive plaintiff has pursued "his rights diligently, and . . . some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 632 (2010) (cite omitted). "[A] person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993) (cite omitted), *aff'd*, 512 U.S. 477 (1994).

Nevertheless, a premature blanket toll is inappropriate when it requires the court to rule in the dark as to the circumstances of potential class members who have not yet joined the action. *See, e.g.*, *Miller-Basinger v. Magnolia Health Sys.*, 2016 U.S. Dist. LEXIS 20920, 6 (S.D. Ind. Feb. 22, 2016) ("[i]t is premature for this Court to toll the statute of limitations for potential plaintiffs because doing so would require the Court to issue an advisory opinion"); *Weil v. Metal Techs., Inc.*, 2015 U.S. Dist. LEXIS

11

135991, 7 (S.D. Ind. Oct. 6, 2015) (denying for the same reasons motion to equitably toll the statute of limitations for putative FLSA collective action members). The court appreciates that this case has lingered before being reassigned to this presiding judge, but that alone isn't a basis to equitably toll the statute of limitations. Equitable tolling may well be appropriate later, but the court won't make that determination now, without knowing whether a particular plaintiff or group of plaintiffs knew about this action but forewent the opportunity to join, whether the class notice served as the first word of the opportunity to opt in, or a great many other facts that this record lacks. Equitably tolling the statute of limitations for a swath of plaintiffs whose circumstances are unknown could potentially benefit plaintiffs who have sat on their hands while their claims have tolled and who don't deserve equity. In short, ruling now would be premature.

CONCLUSION

For the foregoing reasons, the court GRANTS Ms. McColley's motion for conditional certification [ECF 65], DENIES AS PREMATURE Ms. McColley's motion for equitable tolling [ECF 93], and DENIES Ms. McColley's motion to strike Casey's notice of supplemental authority because the legal authority was already known to the court [ECF 116].

Given the time that has passed since the motion was filed and the case reassigned to this presiding judge, the court ORDERS the parties to meet and confer on or before April 10, 2021 on a proposed form of notice. The court ORDERS the plaintiff to file the proposed notice by April 14, with any objections due from the defense by April 21, not to exceed three pages. The court will address any objections promptly, likely at a telephonic hearing, and then order issuance of the notice. The court further ORDERS the parties to confer concerning a timeline, if needed, for the defendant to produce to the plaintiff class member names, dates of employment, and known addresses.

SO ORDERED.

March 31, 2021        *s/ Damon R. Leichty*
       Judge, United States District Court