**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JOY MCCOLLEY, on behalf of herself and all others similarly situated,<br>　　　Plaintiffs, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:18-CV-72-DRL-JEM |
| CASEY'S GENERAL STORES, INC., *et al*.,<br>　　　Defendants. | ) ) ) ) | |

**ORDER**

This matter is before the Court on Plaintiffs' Motion to Compel Production of Documents and Electronically Stored Information of the Area Supervisors, District Managers, and Regional Directors who Supervised Plaintiff and the 75 Representative Plaintiffs [DE 300] and Plaintiff's Motion to File a Confidential Exhibit Under Seal [DE 303], both filed March 4, 2025.

### I.    Background

On February 16, 2018, this putative class action was filed asserting that Defendants violated FLSA overtime requirements by failing to pay required overtime compensation to its store managers due to misclassifying them as exempt. Discovery was bifurcated between issues related to class certification and the case in chief. On March 31, 2021, Plaintiffs' motion for conditional certification was granted, and 1,916 individuals have joined this action as opt in Plaintiffs. On April 6, 2023, the Court approved the parties' agreed discovery plan, which provided that the parties would identify 75 opt-in plaintiffs to respond to written discovery requests propounded by Defendants. For each of those 75 opt-ins, Plaintiffs could choose to depose either an employee who reported to the opt-in or a supervisor. The parties also agreed that electronically stored information could be obtained from any individual identified in a Rule 26 disclosure and any

1

individual identified as an ESI custodian or witness for trial, among other custodians. The current deadline for this second phase of discovery is May 29, 2025. On January 16, 2025, the Court granted Plaintiffs request to substitute Nancy White as the named plaintiff after the original plaintiff, Joy McColley, died.

Plaintiffs filed a motion to compel on November 21, 2024, but after several hearings and conferences between the parties, they were able to narrow the issues, and that motion was denied without prejudice with leave to file a motion describing the remaining dispute. Plaintiffs filed the instant motion as ordered on March 4, 2025, along with a motion to seal one of their exhibits. Defendants filed a response to the motion to compel on March 11, 2025, and on March 14, 2025, Plaintiffs filed a reply. No response to the motion to seal or additional briefing on the issue was filed.

## II.    Seal

Plaintiffs represent that an exhibit in support of the motion to compel was designated as confidential by Defendants and, in accordance with the parties' protective order, filed a motion to seal it without taking any position as to whether the information should be sealed. The Court took the motion under advisement and ordered Defendants to file a supplemental brief addressing the need to seal the document. "The public has a legitimate interest in the record compiled in a legal proceeding because the public pays for the courts," but this interest may be overridden "if there is good cause for sealing part of the record." *Forst v. Smithkline Beecham Corp.*, 602 F. Supp. 2d 960, 974 (E.D. Wis. 2009) (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999)). No supplemental briefing was filed and the deadline has passed. Accordingly, the Court concludes that there is not good cause for sealing the document and it will be placed on the public docket.

### III.    Motion to Compel

Plaintiffs seek documents and electronic information, including emails, from the direct supervisors of Plaintiff White and the 75 representative plaintiffs, and seek to compel Defendants to supplement their initial disclosures. Defendants argue that the ESI request is burdensome, encompassing more than 2.8 million emails and costing up to $14 million. They also include in their brief a request for a protective order and ask that the Court find that they need not respond to any of the discovery requests referred to in Plaintiff's motion. To the extent that Defendants intend this to be a separate motion, the Court reminds them that the Local Rules provide that "motions must be filed separately" from response briefs, N.D. Ind. L.R. 7-1(a), and this is not a properly supported motion. The Court addresses their substantive arguments herein.

Pursuant to Rule 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense" and "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Rule 37(a) permits a party to move the Court for an order compelling disclosure or discovery, specifically allowing for an order to compel production of documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). The Court has "broad discretion to . . . manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014).

The burden is on Defendants, as "'the objecting party[,] to show why a particular discovery request is improper,'" and they "must show with specificity that the request is improper." *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008) (quoting *Kodish v. Oakbrook Terrace*

*Fire Protection District*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006); citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D.Ind.2002)).

    A.  <u>Electronically Stored Information</u>

Plaintiffs are requesting documents and electronically stored information, including emails, from direct supervisors of the named plaintiff and the 75 representative plaintiffs from the statutory period of February 16, 2015, to the present and have proposed specific search terms to assist in finding relevant emails and to narrow the scope of their request. They explain that they are looking for communications that reveal the restrictions on store managers' ability to manage their stores and how closely they were supervised. Defendants argue that they have already produced a lot of discovery with respect to these individuals. They represent that running the agreed ESI protocol and Plaintiffs' proposed search terms just for 104 supervisors yielded more than 2.8 million emails, which they characterize as not reasonably targeted to lead to admissible evidence. Defendants argue that reviewing all of these documents, redacting as appropriate, and producing them would cost up to $14 million in attorney fees, and that constitutes an undue burden under Rule 26(b)(2)(B) ("On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).")

Defendants argue that reviewing millions of emails and attachments is not proportional to the needs of the case. They assert that it is very likely that a lot of the information resulting from the search is not actually relevant, and to the extent that there is relevant information, it is available from other sources in ways that are less burdensome and less expensive. In particular, Defendants argue that depositions of the relevant supervisors are already contemplated by the discovery plan

and would provide a significant amount of the relevant information that is being sought in these emails.

Plaintiffs point out that this is a class action involving allegations of overtime violations as to a large number of allegedly misclassified employees across all of Defendants' stores nationwide, so a large amount of discovery is proportionate to the breadth of the claims in the case. They also argue that the sheer number of email messages is indicative of the amount of control exerted over workers who were classified as exempt and that volume is itself part of the important evidence in the case, and that even the high estimate given by Defendants for producing the discovery is a tiny portion of Defendants' corporate profits and a percentage of the damages award being sought. Plaintiffs assert that when Defendants balked at the scope of this discovery, Plaintiffs offered to limit production to the managers of the 30 deposition opt-in plaintiffs, which would be approximately 100 individuals if Defendants agreed to only provide testimony and evidence from individuals for which it produced discovery, but Defendants refused. Plaintiffs also point out that the 2.8 million emails likely include duplicates, and that de-duplicating the results could reduce the number significantly. It appears that Defendants are intending to review the ESI for use in their own case, but object to providing the same discovery to Plaintiffs or to limiting the individual witnesses for both parties in order to keep the volume of discovery and attendant costs down. Furthermore, although some of this information may be obtained in depositions, Defendants may not refuse to produce documents and determine for Plaintiffs the methods of discovery they must use. Not only is information in the documents relevant to showing commonality and providing other evidence Plaintiffs need that is not necessarily ascertainable from a few depositions, Plaintiffs also may use written documents to prepare for depositions to make them as efficient as possible or to impeach witnesses. In short, it is unreasonable of Defendants to refuse to limit the

5

universe of custodians and dictate the method by which it will provide information to Plaintiffs without agreeing to limit themselves to the information produced in discovery.

The Court acknowledges that Defendants have already produced a lot of information in discovery, but that does not mean that they have produced enough relevant information. Plaintiffs' requests are, on their face, reasonably targeted to lead to admissible evidence, although the sheer amount of discovery may be costly to produce. Defendants, as the custodians of the discovery, should have a better idea than the Court what methods are possible to reduce the scope or method of production in such a way to reduce the cost and burden without foreclosing Plaintiffs from obtaining the documents they are entitled to. The Court is not privy to all the conversations that have gone on between the parties, but from what has been presented to the Court, it appears that there are other methods of limiting the cost and burden of the discovery. For example, if Defendants believe that the search terms are insufficiently targeted to attain relevant information, they may propose their own terms or other ways of limiting the search results. The Court notes that some of the terms they object to do appear specifically targeted to obtain relevant information, such as determining who is responsible for work like stocking shelves and taking out trash and which employees worked overtime. However, de-duplication of the ESI will decrease the production. In addition, the parties might also be able to limit the searches to specific windows of time sufficient to provide snapshots over the time period of the case – not the single week produced by Defendants, but a few weeks or months over different retail seasons selected to give a good representative sampling of ESI over the multi-year timeframe, perhaps supplemented by follow up requests if necessary. The most obvious method of limiting the discovery is for Defendants to agree to limit the custodians from whom ESI must be obtained, and to limit themselves to using only disclosed information from those custodians.

In short, although some additional limitations to the discovery requests may be appropriate, the contention of Defendants that they need not produce any of the electronic discovery requested by Plaintiffs in the instant motion is unreasonable. The Court will not enter their requested protective order and finds that they must provide additional ESI to Plaintiffs, but will not require them to respond to all of the requests as currently proposed. Instead, the Court encourages the parties to continue to work together to limit the discovery requests in ways targeted to allow Plaintiffs access to the information they are entitled to but with less burden on Defendants, as suggested above.

B. Initial Disclosures

Plaintiffs seek to have Defendants identify by name the district managers who have information regarding the claims or defenses, since they have been identified generally as Rule 26 witnesses and Plaintiffs need to decide who to depose. In their supplemental initial disclosures, Defendants generally identified individuals who reported to particular store managers, which could encompass hundreds of witnesses, none of whom are identified by name. Defendants argue that the discovery plan provides that Plaintiffs can take the deposition of a direct report or supervisor for each of the 75 designated opt-in plaintiffs, so it is appropriate for it to include all of those individuals in its supplemental initial disclosures as potential witnesses, and that it is not unreasonable to expect Plaintiffs to review the identified discovery documents to ascertain the contact information of the potential witnesses. Defendants also argue that identifying documents that include information about possible witnesses is sufficient, and that they are not required to produce the documents relied upon by those witnesses.

Rule 26(a)(1) governs initial disclosures and requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable

information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Although that provision of discovery need not be part of the initial disclosures, it does not mean that Defendants need not also provide the discoverable information. *See* Fed. R. Civ. P. 34. Defendants' disclosures do not comply with Rule 26(a)(1)'s requirements. This case is not in its infancy; the discovery deadline is fast approaching and Defendants cannot just handwave generally at categories of employees as possible witnesses. They must supplement their initial disclosures to identify by name and address, telephone, and/or email address each individual and the information the individual is likely to provide that Defendants may use to support their claims and defenses. The Court suggests that limiting themselves to particular witnesses, and limiting the list of ESI custodians to the same list, will aid Defendants in complying with its discovery requirements under the Rules.

C. Discovery Deadline

It appears that the parties will need additional time to complete the discovery described herein. This matter is currently set for a status conference on April 17, 2025, at which the parties should be prepared to address how much additional time is needed. At the hearing, they should also be prepared to briefly address the additional agreements they have reached about ESI in light of this Order.

**IV.    Conclusion**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to File a Confidential Exhibit Under Seal [DE 303] and **DIRECTS** the Clerk of Court to put the document identified as Exhibit G at [DE 302] on the public docket, not under seal. The Court **GRANTS** Plaintiffs' Motion to Compel Production of Documents and Electronically Stored Information of the Area

Supervisors, District Managers, and Regional Directors who Supervised Plaintiff and the 75 Representative Plaintiffs [DE 300] to the extent described above, **DENIES** Defendants' request to issue a protective order, and **ORDERS** the parties to continue to try to come to agreement on how to limit ESI discovery as described herein before the telephonic status conference set for **April 17, 2025, at 11:00 a.m.** (Central Time).

Because the motion is granted in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Accordingly, the Court **ORDERS** Plaintiffs to file, on or before **April 10, 2025**, an itemization of their costs and fees, including attorney's fees, incurred in bringing the motion to compel along with argument as to why those expenses are reasonable in this situation. The Court **ORDERS** Defendants to file a response by **April 24, 2025**, and Plaintiffs to file a reply, if any, by **May 1, 2025**.

SO ORDERED this 26th day of March, 2025.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record

9