IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| NANCY WHITE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY, and CASEY'S RETAIL COMPANY,<br><br>Defendants. | Case No.: 2:18-CV-00072 (DRL) (JEM) |

## JOINT STATUS REPORT

Plaintiff Nancy White, on behalf of herself and the Opt-in Plaintiffs and Defendants, Casey's General Stores, Inc., Casey's Marketing Company, and Casey's Retail Company (together as "Casey's") submit this further joint status report concerning the parties' discovery conferral efforts. At ECF No. 315, on April 17, 2025, the Court Ordered the parties to confer and provide a status report by May 15, 2025, regarding outstanding discovery issues.

- <u>Defendants' Supplemental Rule 26(a)(1)(A) Disclosures</u>: Pursuant to the Court's March 26, 2025 Order (ECF No. 309), Defendants served Supplemental Rule 26(a)(1)(A) Disclosures on May 2, 2025.  Defendants' Supplemental Disclosures reduced the number of potential witnesses identified as follows:
  - Reduced the number of up-the-chain supervisors from 104 to 50 by limiting the disclosed individuals to the last District Manager and Regional Director to whom the Discovery Opt-in Plaintiffs, identified for deposition reported.  Defendants maintain that these changes conform with the Court's guidance in the March 26, 2025 Order. Defendants specifically reduced the number of up-the-chains supervisors identified in

order to limit the custodians from whom ESI must be obtained and will agree to limit themselves to using only disclosed information from those custodians. *See* ECF No. 309, p. 6.

- Below, Plaintiffs appear to be suggesting that, now that Defendants have reduced the number of up-the-chain supervisors identified in their disclosures as described above, Defendants should now identify every supervisor to whom all 75 of the Discovery Opt-Ins reported in their initial disclosures and produce ESI for all of those individuals. Defendants maintain that this proposal runs counter to the Court's guidance in the March 26, 2025 Order cited above and would dramatically increase the amount of ESI at issue beyond what is presently being discussed.

- Defendants further note that, at present, Plaintiffs' supplemental initial disclosures categorically identify, "[a]ll supervisors for any individual who opt-in to this action," without identifying any specific supervisors or providing any information regarding the topics about which such individuals may testify. In other words, taken at face value, Plaintiffs initial disclosures categorically identify the supervisors to whom the more than 1,900 Opt-in Plaintiffs reported. Defendants maintain that the scope of ESI discovery related to up-the-chains supervisors should be governed by the Court approved discovery plan and the Court's March 26, 2025 Order and not the overly broad scope of Plaintiffs' supplemental initial disclosures.

o Reduced the number of hourly direct reports who reported to the Discovery Opt-in Plaintiffs identified for deposition from approximately 3,500 to approximately 1,400

2

by limiting the individuals identified to those individuals who reported to the Discovery Opt-in Plaintiffs for at least six months during the applicable statutory period. Defendants maintain that identifying the individuals who reported to the Discovery Opt-ins selected for deposition for at least six months while those Discovery Opt-ins were in the Store Manager position appropriately identifies individuals who are "likely to have discoverable information" pursuant to Rule 26(a)(1)(A) and that the reduction of individuals identified conforms with the Court's guidance in the March 26, 2025 Order. Specifically, each of the individuals listed is likely to have knowledge of the day-to-day duties and responsibilities performed by the Opt-in Plaintiffs during the time they reported to the Opt-in Plaintiffs. Plaintiffs suggestion that Defendants identify individuals who "actually" have discoverable information is an attempt to modify Rule 26(a)(1)(A), which only requires Defendants to identify individuals "likely" to have discoverable information.

- <u>Plaintiffs' Position on Defendants' Second Supplemental Rule 26(a)(1)(A) Disclosures</u>:
  - Plaintiffs believe that identifying 1,400 hourly co-workers violates this Court's March 26, 2025 Order (ECF No. 309). Plaintiffs again reiterate that it is improper for Defendants to categorically identify 1,400 individuals just because they worked with the Representative Discovery Opt-Ins and Plaintiff. Regrettably it is exponentially increasing the discovery burden on Defendants, the proportionality of which Defendants to question.
  - Defendants continue to object to the production of electronic discovery for the 1,400 co-employees identified in its disclosures.
  - Defendants now raise for the first-time without conferring with Plaintiffs deficiencies that they have identified in connection with Plaintiffs' Initial Disclosures. This is

contrary to the Court's rules and Defendants were required to confer with Plaintiffs before raising these alleged deficiencies with the Court in this Joint Status Report. Particularly as Plaintiffs do not believe that several of the items raised are accurate. It is Plaintiffs understanding that there are 1,508 timely Opt-Ins in this action and that the Representative Discovery Opt-ins were selected from these 1,508 timely individuals.[1]

- The parties' Stipulated Representative Discovery Plan (Dkt. No. 259), which this Court Ordered (Dkt. No. 260), limits discovery to the 75 Representative Discovery Opt-ins and their Up-the -Chain Supervisors, Plaintiffs are in no way suggesting that discovery should be taken on the Up-the Chain Supervisors for 1,900 individuals, only the approximately 200 Up-the-Chain Supervisors of the 75 Discovery Opt-Ins. 200 Up-the Chain Supervisors were contemplated by the scope of the 75 Representative Discovery Opt-ins whereas the identification of 1,400 co-employees is a recent addition of Defendants to this case.

- Defendants' supplemental disclosures do not comport with the requirements of Rule 26. Plaintiffs also note that the categories and subject matter of the knowledge these individuals possess is conspicuously absent from Defendants' Third Supplemental Individual Disclosures and it is required to be provided per Fed. R. Civ. P. 26(a)(1)(A)(i). The lack of information indicates that Defendants did not speak with all or even most of these individuals to determine that they do in fact have actual knowledge of the claims and defenses in this action. Since it is apparent that

---

[1] Plaintiffs reserve their right to appeal this Court's tolling order (Dkt. No. 241, 255) however, the Court was clear that Plaintiffs could not do so on an interlocutory basis, so any action taken would need to occur after a final judgment or order is issued in this action.

Defendants have not spoken to a large segment of these witnesses, Plaintiffs question how Defendants can represent that these approximately 1,400 individuals actually have discoverable information.

- Plaintiffs have consistently identified the up-the-chain custodians for the 75 Discovery Opt-ins as proper custodians and witnesses in this matter. Defendants' limitation in its supplemental disclosures of the Up-the-Chain Supervisors from all of the Discovery Opt-Ins to just the Deposition Opt-Ins does nothing to impact the scope of discovery in this matter as those are witnesses that Plaintiffs are seeking information from. If Defendants were to significantly reduce their 1,400 co-employee witnesses into tens of witnesses, then Plaintiffs would respond in kind.

- Plaintiffs anticipate that they will need to file another motion relating to Defendants' Third Supplemental Initial Disclosures as Defendants indicated they will not further amend or limit them.

- <u>Defendants' Email Search Proposal for Up-the-Chain:</u> On April 15, 2025, in an effort to reduce the 1.2 TB of email previously identified as potentially responsive to search terms proposed by Plaintiffs' Counsel, Defendants' Counsel sent Plaintiffs' Counsel a proposal regarding search terms and time frames to be applied to the email collected for the up-the-chain supervisors identified in Defendants' Supplemental Disclosures and the email collected from the stores where the Discovery Opt-Ins identified for deposition worked. Counsel for the Parties discussed Defendants' proposal on May 9, 2025, by phone. Plaintiffs have now provided their counterproposal as outlined by Plaintiffs below.

  - Defendants' counterproposal to Plaintiffs' proposal below is as follows: Defendants will review and produce emails for the up-the-chain supervisors now identified in Defendants' supplemental initial disclosures that are responsive to Plaintiffs'

5

discovery requests for one month of Plaintiffs' Counsel's choosing for the calendar years 2021, 2022, 2023, and 2024.

- As noted above, Defendants maintain that they reduced the number of up-the-chain supervisors identified in their supplemental initial disclosures based on the Court's guidance in the March 26, 2025 Order and that ESI discovery should be limited to the up-the-chain supervisors identified.

- Defendants have rejected Plaintiffs' counterproposal described below because identifying all up-the-chain supervisors for all 75 of the Discovery Opt-ins would increase the number of up-the-chain supervisors identified to over 200 up-the-chain supervisors, which is far beyond the 104 up-the-chains supervisors Defendants had identified in their second supplement initial disclosures. This significant increase in custodians would, in turn, would result in far more than the 1.2 TB of data to be culled, reviewed and produced. Defendants maintain that this significant increase in custodians is unnecessary since, per the Court's guidance, Defendants have reduced the number of up-the-chain supervisors identified in their initial disclosures and will agree to limit themselves to using only disclosed information from those custodians.

- Defendants further note that, while Plaintiffs claim to have produced discovery for all 75 Discovery Opt-ins, several of those individuals failed to respond to Defendants' written discovery requests, while other responded to written discovery but did not produce any documents. In total, only 18 of the 75 Discovery Opt-ins have produced any documents at all. In total, those 18 individuals have produced only 80 pages of documents. Named-Plaintiff Nancy White has not produced any documents. Former Named Plaintiff Joy McColley only produced 1 page. Defendants intend to address these significant discovery deficiencies with Plaintiffs' Counsel and, if necessary,

through motion practice. However, Defendants raise these issues here to counter Plaintiffs' claim below that they have produced discovery for all 75 Discovery Opt-Ins.

- Plaintiffs' Email Search Proposal for Up-the- Chain Supervisors: [2]

    o Plaintiffs' proposal is as follows-

    *Plaintiffs' Proposed ESI Protocol for the Up-the-Chain Supervisors*: With respect to the "Up- the-Chain" Supervisors for the Discovery Opt-Ins, Plaintiffs propose a focused four-month time period within each year of the relevant statutory period up to the present, for example, January-April of 2020, May-September of 2021 and similar for other years within the statute for each supervisor of the 75- Discovery Opt-ins.

    o All Plaintiff is seeking is discovery consistent with what this Court has ordered, while Defendants have rejected Plaintiffs' proposals. This Court's second-phase discovery order explicitly directed discovery to be conducted related to the *75 Discovery Opt-ins*. Plaintiffs have already produced discovery consistent with that schematic. Now, Defendants are attempting to substantially reduce their own discovery burden. As the Court knows this isn't a new issue, most of this discovery was already the subject of this Court's March 26th Order granting Plaintiffs' motion to compel. That Order specifically urged the parties to confer following its issuance.

    o On April 15, 2025, Defendants' counsel offered a proposal to limit the email search to a narrow subset: certain "up-the-chain supervisors" and emails from stores where specific "Deposition Opt-Ins" worked for only the 30 deposition opt-ins and their supervisors for "one week of [Plaintiffs'] choosing for the years 2021, 2022, 2023,

---

[2] Defendants now raise alleged deficiencies with Plaintiffs' discovery responses for the first time in this filing even though they were served years ago. Contrary to the rules of this Court, Defendants have never requested to confer on these issues. The parties must confer before addressing it with the Court as is required. Nor was this issue in Defendants' initial draft of the Joint Status Report which we received last week.

and 2024." This directly contradicts the spirit of the Court's order directing the parties to, "[. . .] continue to work together to limit the discovery requests in ways targeted to allow Plaintiffs access to the information they are entitled to but with less burden on Defendants [ . . .]" and stating that "[. . .] de-duplication of the ESI will decrease the production. In addition, the parties might also be able to limit the searches to specific windows of time sufficient to provide snapshots over the time period of the case – not the single week produced by Defendants, but a few weeks or months over different retail seasons selected to give a good representative sampling of ESI over the multi-year timeframe, perhaps supplemented by follow up requests if necessary. The most obvious method of limiting the discovery is for Defendants to agree to limit the custodians from whom ESI must be obtained, and to limit themselves to using only disclosed information from those custodians." Dkt. No. 309 at 6-7.

- o The parties are again at an impasse over the scope of electronic discovery, specifically concerning email communications.

- Plaintiffs' Email Search Proposal for the Store Email Boxes:

  - o Plaintiffs intended to propose the same four month per year time period for the store-level email boxes for all of the years in the statutory period, however again as Defendants have identified 1,400 store employees in their 26(a) disclosures which contain ASMs that have access to and send and receive email from the store email box there is no reasonable way to identify a four month period that would contain the co-employees overlapping time.  It would be a virtually herculean task to identify this with the information provided.  Therefore, we have no choice but to identify the time

period as all months where the Discovery Opt-ins worked in the stores, if the Defendants would limit their supplemental disclosures to a reasonable number of identified individuals than it would be ascertainable and we would again make a proposal requesting a four month per year time-period for production.

- <u>Defendants' Email Search Proposal for the Store Email Boxes:</u>
  - o Defendants' proposal regarding email from store email boxes parallels Defendants' proposal regarding up-the-chain supervisor email described above: Defendants will review and produce emails for the from the store email boxes where the 30 Discovery Opt-in Plaintiffs identified for deposition worked that are responsive to Plaintiffs' discovery requests for one month of Plaintiffs' Counsel's choosing for the calendar years 2021, 2022, 2023, and 2024.
  - o Defendants note that they have already produced all emails sent from corporate to stores from April 2018 through July 2019, consisting of 3,521 pages. Defendants have also produced 16,808 emails and attachments sent to and from Casey's stores during the week of December 4, 2022. Based on these previous productions, Defendants maintain that four additional months' worth of store email is sufficient given the cumulative and duplicative nature of store email and the additional ESI that Defendants have offered to produce, as described herein.

- <u>Defendants' Update Regarding Other Outstanding ESI Issues:</u>[3]
  - o As previously reported, Defendants have collected over 12 TB of data responsive to Plaintiffs' request for all ESI related to the Casey's Connection system used by Casey's corporate and management to communicate with stores. Defendants are

---

[3] Defendants have already detailed their prior production efforts in their opposition to Plaintiffs' Motion to Compel and the Court nevertheless compelled Defendants to produce additional discovery.

willing to produce all of this data to Plaintiffs and are working with Casey's vendor to produce this data in an organized and cost-effective manner. This 12 TB of data consists of 215,687 different files. Over 183,000 of those files (approximately 83 percent of the total file count) are either image or video files. The approximately 32,600 (approximately 17 percent of the total file count) are not image or video files. As Plaintiffs note below, while Defendants continue to work with the vendor to organize this data for production, Defendants have agreed to take screenshots of the Casey's Connection system which Defendants intend to share with Plaintiffs.

- Plaintiffs' Update Regarding Other Outstanding ESI Issues:
    - The parties conducted a series of conferrals concerning whether Casey's Connection data sent from the stores to corporate in fact existed, and the nature of the content of this data. Historically, Casey's acknowledged that they had a Casey's Connection system which contains information related to in store operations, task checklists, project deadlines, and pictures of completed assignments. Casey's identified approximately 80,000 documents as Casey's Connection materials and after reviewing them Plaintiffs realized that none of the communications sent from the stores back to corporate were provided. After many months of asking Casey's to go back to its vendor and being told that there was no responsive data, Plaintiffs were later told that there was in fact 12TB of data which represented communications going from the store employees up to corporate through the Casey's Connection system. Of the 12TB of data, 15% (meaning 3TB of the data) is comprised of checklists, task lists and other information regarding store operations that were sent from the store to corporate. The remaining 9 TB are pictures employees sent from the store to corporate to demonstrate completion and to confirm that the work was

performed satisfactorily. Plaintiffs made several proposals to Casey's as to how to work together to reasonably access the information in a way where it can be understood. Currently, Casey's has accepted Plaintiffs' proposal to take screenshots of the various menus that show the way that they communicate the checklists and task lists into their system, Plaintiffs are otherwise waiting for Casey's proposal as to how they intend to provide the remainder of the data in a useable format. This is the first time that Defendants have informed Plaintiffs of the number of files at issue and Plaintiffs do not believe that 215,687 files is an unreasonable number of files to produce in a case of this size.

- Joint Update Regarding Depositions:
  - Pursuant to the Parties' Stipulated Discovery Plan (ECF 259), Defendants may depose up to 30 of the Opt-In Plaintiffs identified for discovery. Defendants also intend to depose Named-Plaintiff Nancy White. To date, Defendants have completed six of the 30 Opt-In Plaintiff depositions. Defendants previously noticed the remaining 24 Opt-in Plaintiff depositions. However, Plaintiffs' Counsel objected to producing any additional Opt-in Plaintiffs for deposition until after the Parties' disputes related to ESI discovery are resolved, and materials produced.
  - At Plaintiffs' request, Defendants, have agreed to produce two additional witnesses requested by Plaintiffs for deposition, with the understanding that Plaintiffs will not seek to reopen these depositions after the Parties' disputes related to ESI discovery are resolved.

- Plaintiffs' Additional Update:
  - Currently Plaintiffs believe that it would be ripe to make additional motions to compel: (1) the Store and Up-the-Chain Supervisors' email boxes, (2) further

limitations on Defendants' Rule 26 disclosures, and (3) to compel discovery in relation to the co-employees identified on Plaintiffs' Initial Disclosures.

- o Again, the alleged deficiencies raised now for the first time in the below section entitled "Defendant's Additional Update" were never discussed with Plaintiffs despite the responses having been served years ago. Contrary to the rules of this Court, Defendants have never requested to confer on these issues. The parties should confer before addressing these unvetted allegations with the Court as is required.

- Defendant's Additional Update:
    - o Defendants intend to address Plaintiffs' discovery deficiencies, some of which are described above, with Plaintiffs' and, if necessary, through motion practice.

Date:  May 27, 2025

Respectfully submitted,

*/s/ John Lassetter*

John H. Lassetter (MN #0389009)
Niloy Ray (MN #0398699)
Brendan C. Johnson (MN #0403009)
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000
E-mail:  jlassetter@littler.com
E-mail:  nray@littler.com
E-mail:  bcjohnson@littler.com

Sarah Doty (#35007-53)
**LITTLER MENDELSON, P.C.**
111 Monument Circle, Suite 702
Indianapolis, IN  46204
Telephone:  317.287.3600
Facsimile:   317.636.0712
E-mail: sdoty@littler.com

*Attorneys for Defendants*

Date: May 27, 2025

*/s/ Rebecca S. Predovan*
Rebecca S. Predovan\*

Marc S. Hepworth*
Charles Gershbaum*
David A. Roth*
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
E-mail: mhepworth@hgrlawyers.com
E-mail: cgershbaum@hgrlawyers.com
E-mail: droth@hgrlawyers.com
E-mail: rpredovan@hgrlawyers.com

Michael Palitz*
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, NY 10022
Telephone: 800-616-4000
Facsimile: (561) 447-8831
E-mail: mpalitz@shavitzlaw.com
Gregg I. Shavitz*
Camar Jones*
**SHAVITZ LAW GROUP, P.A.**
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
E-mail: gshavitz@shavitzlaw.com
E-mail: cjones@shavitzlaw.com
E-mail: lpardell@shavitzlaw.com

Richard E. Shevitz
Scott Gilchrist
**COHEN & MALAD, LLP**
One Indiana Square Suite 1400
Indianapolis, Indiana 46204
Phone: (317) 636-6481
Facsimile: (317) 636-2593
Email: rshevitz@cohenandmalad.com
Email:  sgilchrist@cohenandmalad.com

                                              Attorneys for Plaintiffs and the Putative FLSA Collective Members

*admitted or to apply for admission *pro hac vice*