IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA

NANCY WHITE, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

CASEY'S GENERAL STORES, INC.,
CASEY'S MARKETING COMPANY, and
CASEY'S RETAIL COMPANY,

Defendants.

Case No.: 2:18-CV-00072 (DRL) (JEM)

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION OF THE AREA SUPERVISORS, DISTRICT MANAGERS, AND REGIONAL DIRECTORS WHO SUPERVISED PLAINTIFF AND THE 75 REPRESENTATIVE PLAINTIFFS AND MOTION TO COMPEL ESI PRODUCTION FROM THE STORE EMAIL BOXES**

Plaintiff Nancy White and all Opt-In Plaintiffs (hereinafter "Plaintiffs") file this Motion to Compel seeking production of documents and electronically stored information ("ESI") from the Area Supervisors, District Managers and Regional Directors of Plaintiff White, the 75 Representative Plaintiffs who are subject to discovery, as well as identified Co-Employees that worked with and accessed the same store email box as the Representative Plaintiffs.

I.   **INTRODUCTION**

The Court previously directed the parties to confer on methods to limit the amount of ESI produced, such as using specific windows of time to provide "snapshots" of the case. The Court specifically noted that the most obvious method of limitation was for Defendants to agree to limit the custodians from whom ESI is obtained.

Following these directives, the parties have reached a partial agreement on a 10-week search period for custodians. However, as detailed in the July 25, 2025, Joint Status Report, two

primary disputes remain: (1) the number of custodians for whom ESI must be produced, and (2) the temporal scope of the 10-week searches for each custodian.

## II. PERTINENT PROCEDURAL BACKGROUND

On March 31, 2023, the parties presented to the Court their Stipulated Representative Discovery Plan for discovery. ECF No. 259. On April 6, 2023, the Court entered an ordered granting the parties' Stipulation. *See* ECF No. 260. The Representative Discovery Plan provides that: 75 Opt-ins would be selected to respond to Defendants' written discovery requests and request for production of documents and that Defendants may depose 30 of these individuals. ECF No. 259 ¶ 4, 6. The Opt-ins selected for Representative Discovery are referred to herein as "Representative Plaintiffs" all of which are or were Store managers at Defendants' convenience stores. For each Representative Plaintiff selected for deposition, Defendants committed to identify the up-the-chain supervisors (Area Supervisors, District Managers, and Regional Directors) and the other employees employed at the same time and at the store(s) where the Representative Plaintiff held the Store Manager position. ECF No. 259 ¶ 8. This is the scope of discovery that relates to the stores and in store operations in this action.

Plaintiffs served their Second Set of Discovery Requests on January 16, 2023. A copy of which is attached hereto as **Exhibit A**. Defendants served their initial responses on October 16, 2023, thereafter, producing discovery on a rolling basis. A copy of Defendants' responses are attached hereto as **Exhibit B**. Defendants served their Fourth Supplemental Initial Disclosures on September 9, 2025. A copy of which is attached hereto as **Exhibit C**.

Plaintiffs have sought to compel ESI discovery twice already in this action. Plaintiffs filed a motion to compel on November 21, 2024, but after several hearings and conferences between the parties, they were able to narrow the issues, and that motion was denied without prejudice with

2

leave to file a motion describing the remaining dispute. *See* Dkt. No. 309 at 2.[1]  After several conferrals with Defendants, Plaintiffs then filed a second motion to compel on March 4, 2025, for Production of Documents and Electronically Stored Information of the Area Supervisors, District Managers, and Regional Directors who Supervised Plaintiff and the 75 Representative Plaintiffs. The Court granted Plaintiffs March 4, 2025 Motion as described in the Court's March 26, 2025 Order.  In that Order the Court directed the parties to further confer on methods by which they could produce the ordered discovery germane to this case, while identifying measures by which the amount produced can be limited. *See* Dkt. No. 309 at 6.  The Court provided the following direction to the parties:

> the parties might also be able to limit the searches to specific windows of time sufficient to provide snapshots over the time period of the case – not the single week produced by Defendants, but a few weeks or months over different retail seasons selected to give a good representative sampling of ESI over the multi-year timeframe, perhaps supplemented by follow up requests if necessary. The most obvious method of limiting the discovery is for Defendants to agree to limit the custodians from whom ESI must be obtained, and to limit themselves to using only disclosed information from those custodians.

*Id*. With respect to Defendants' initial disclosures and their intersection with identifying ESI custodians the Court stated as follows:

> The Court suggests that limiting themselves to particular witnesses, and limiting the list of ESI custodians to the same list, will aid Defendants in complying with its discovery requirements under the Rules.

*Id*. at 8.

---

[1]   A more detailed accounting of the procedural background in this action is provided in Plaintiffs' motion to compel made on November 24, 2024 (Dkt. No. 283, 284) and second motion to compel on March 4, 2025 (Dkt. No. 300, 301).  In the interest of brevity, Plaintiffs provide only the disputes, conferral efforts and compromises reached here.  Plaintiffs have also forgone making further argument as to Defendants original production and its inadequacies as, this Court has already found that it was not sufficient and that additional discovery would need to be produced. Dkt. No. 309.  However, if requested, Plaintiffs can of course re-provide this information.

Plaintiffs have undertaken these efforts in earnest. However, the parties have still not reached agreement. Plaintiffs reiterate as they have during conferral that Defendants should not be permitted to identify witnesses that it may potentially call at trial without providing proper discovery for these individuals.

### B. LEGAL STANDARD

Pursuant to Rule 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense" and "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Rule 37(a) permits a party to move the Court for an order compelling disclosure or discovery, specifically allowing for an order to compel production of documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). The Court has "broad discretion to . . . manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017); *see also Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014).

Here, the burden is on Defendants, as "'the objecting party[,] to show why a particular discovery request is improper,'" and they "must show with specificity that the request is improper." *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008) (quoting *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006); citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D.Ind.2002)).

### III. PLAINTIFFS SEEK HIGHLY RELEVANT DISCOVERY FROM CORE CUSTODIANS – THE AREA SUPERVISORS, DISTRICT MANAGERS, AND REGIONAL DIRECTORS WHO SUPERVISE THE PLAINTIFF AND REPRESENTATIVE PLAINTIFFS

Plaintiffs filed two prior motions to acquire this and other ESI and have exhaustively attempted to resolve outstanding discovery issues by adopting the Court's suggestion (at the Court's July 31, 2025 Conference with the parties *see* Dkt. No. 337) to use approximately 100 Up-the-Chain Supervisors as custodians. Defendants have only agreed to produce information responsive to Plaintiffs' discovery requests and accompanying search terms for the Up-the-Chain Supervisors identified in their initial disclosures.[2] Defendants have identified only 58 such District Managers, and Regional Directors who supervised each Representative Plaintiff identified for deposition in paragraph 26 of their Fourth Supplemental Initial Disclosures. While Plaintiffs agree to this limitation, Plaintiffs note that they originally did so when Defendants had projected the number of individuals would result in approximately 100 custodians.[3]

Regarding the scope of production, the parties' conferrals have netted an agreement to a 10-week search period for these custodians for selected years in the statutory period. To further bridge the gap, Plaintiffs have compromised on the temporal scope, moving from a request for the full statutory period to six years, rather than the ten originally requested. Defendants, however, refuse to provide ESI for any period beyond five years (2021–2025), which would exclude critical evidence from the earlier portion of the statutory period. For the 37 pre-notice Opt-Ins to this action the statutory period can range back to 2015 and continue to present, however for the vast

---

[2]   Plaintiffs have agreed to this protocol and all other proposed protocols within this motion with the understanding that Defendants will not seek to use any information outside of the agreed 10-week period. In other words, if Defendants later locate documentation beyond that produced, they cannot suddenly produce it and seek to use it, both parties would be similarly limited under this protocol.

[3]   This is critical as the Court had indicated during the July 31, 2025 conference that approximately 100 custodians would be a reasonable number both to identify and to produce ESI for and this has guided Plaintiffs' positions both for the Up-the-Chain Supervisors and the Store Level Co- Employees discussed below.

majority of Opt-Ins that filed a consent to join form when they received notice of the action in 2021, their statutory period range runs from 2018 to present.[4] Plaintiffs' proposal which incorporates a one year modest extension, beyond Defendants' proposal ensures that the "snapshot" discovery requested by the Court is truly representative of the multi-year timeframe at issue in this litigation. Again, all of these materials are within Defendants' possession, they have made determinations as to which Area Supervisors, District Managers, and Regional Directors to acquire declarations from and are clearly reviewing this and other materials to further their defenses. Defendants cannot with this benefit, deny Plaintiffs reciprocal discovery needed to identify counter points and their own witnesses for a sufficient period of time within the statutory period to place them on equal footing. The ultimate result of which would be trial by ambush where in Plaintiffs would have limited access to this information, the remainder of which would remain solely within the purview of Defendants.

Plaintiffs ask that the Court to make a finding that Plaintiffs are entitled to an additional ten-week period for another (sixth) year within the statutory period. This is critical as there are ten (nearly eleven) years in the statutory period in this case and Plaintiffs will be required at trial to make a showing that the Opt-ins were misclassified in all of them. This discovery is not only relevant but critical proving; for example, evidence that the supervisors of the Store Managers in this case held broad managerial authority over the store all of which will be central in laying the groundwork for a misclassification verdict a trial.

IV. **PLAINTIFFS SEEK A CORE NEXIUS OF DISCOVERY FROM THE STORE EMAIL BOXES USED BY THE REPRESENTATIVE PLAINTIFFS AND CO-EMPLOYEES WORKING IN THE SAME LOCATION.**

---

[4] The actual statutory period for individual opt-ins is of course dictated by individual employment dates during which they could have, if not classified as exempt, earned overtime pay. Plaintiffs here refer to the range of the statutory periods within the FLSA Collective as a whole.

Plaintiffs ask that this Court order Defendants to produce 10-weeks of ESI responsive to Plaintiffs' discovery requests (and limited by the search terms contained therein) for the 75-Representative Opt-ins as well for each of the approximately 300 Co-Employees identified by Defendants in paragraph 28 of Defendants' Fourth Supplemental Initial Disclosures and Exhibits B through DD. Each 10-week period (approximately one-quarter) to be selected by Plaintiffs from six years within the statutory period, totaling six 10-week periods.

To clarify, the Representative Opt-ins and the Co-Employees shared an email box and because of this Plaintiffs address these ESI Custodians jointly, because the discovery would be coming from the same email accounts. The universe of what is being discussed is the email accounts from the stores the 75 Representative Opt-Ins worked in. The dispute between the parties relates to: (1) the number of years within the statutory period for which Defendants would make an ESI production; (2) whom (meaning which of the 75-Representative Opt-ins and the 300-Co-Employees) Defendants would be responsible for making an ESI production for, keeping in mind that there is likely some economy that could be accomplished here for overlapping time periods during which both 75-Representative Opt-ins and the 300-Co-Employees worked together[5]; and, (3) the years within the statutory period for which Defendants are required to make a ESI production.

Defendants' identification of 300 witnesses unfairly inflates the discovery burden. Defendants have unilaterally identified approximately 300 Store Level Co-Employees in their initial disclosures as witnesses they may use to support their defenses. Defendants have refused to further restrict this number as is their right. However, Plaintiffs take issue with Defendants' position that

---

[5] Plaintiffs would expect that 10-week selections could be made in a way where there would be some overlapping periods between the 75-Representative Opt-ins and the 300-Co-Employees.

it will not produce discovery for these individuals that are apparently so intimately intertwined with their defenses in this action that this number cannot be further parsed.

Defendants offer is also woefully inadequate. Defendants offer, "10 weeks of store email for each of the calendar years 2021, 2022, 2023, 2024 and 2025", put another way, "50 weeks' worth of store email" total. Dkt. No. 336 at 6 (Defendants' proposal). As Plaintiffs understand this proposal, it means that Defendants have offered to produce 10-weeks of store email from each of the five years listed above for a single Representative Opt-in. Defendants' proposal does not even cover a single 10-week production for a single calendar year for each of the 75-Representative Opt-ins, individuals which this Court has already determined are to be the subject of written discovery in this action. Defendants do not offer to produce any discovery at all for the 300 Store Level Co-Employees Defendants identified in their disclosures.

The Court need look no further than the Stipulated Representative Discovery Plan that it Ordered (ECF No. 259 ¶ 4, 6) and its discussion in its March 26, 2025 Order concerning discovery stemming from the hundreds of "generally identified individuals who reported to particular" Representative Opt-ins in Defendants' Initial Disclosures, to see that the Court has already provided significant guidance to Defendants, which they have chosen to disregard. *See* Dkt. No. 309 at 7-8. The Court stated in its last Order on this issue that it, ". . . suggests that [Defendants] limiting themselves to particular witnesses, and limiting the list of ESI custodians to the same list, will aid Defendants in complying with its discovery requirements under the Rules." Dkt. No. 309 at 8. However, Defendants have chosen not to do so here. Defendants continued refusal to produce this discovery fails to comport with the direction it has received from this Court and its discovery requirements under the Rules. Using the guidance provided by the Court in the context of the Up-the-Chain Supervisors that the parties might:

8

> . . . limit the searches to specific windows of time sufficient to provide snapshots over the time period of the case – not the single week produced by Defendants, but a few weeks or months over different retail seasons selected to give a good representative sampling of ESI over the multi-year timeframe, perhaps supplemented by follow up requests if necessary. The most obvious method of limiting the discovery is for Defendants to agree to limit the custodians from whom ESI must be obtained, and to limit themselves to using only disclosed information from those custodians.

Dkt. No. 309 at 6.

Plaintiffs have agreed as a compromise to the production of 10-weeks of material responsive to Plaintiffs requests (as limited by their search terms) for each year selected in the statutory period, amounting to six ten-week periods for each of the 75-Representative Opt-ins.

For each of the approximately 300 Store Level Co-Employees that Defendants identified in their disclosures, Plaintiffs request 10-weeks of ESI responsive to Plaintiffs' discovery requests (and limited by the search terms contained therein). Each 10-week period (approximately one-quarter) to be selected by Plaintiffs from six years within the statutory period, totaling six 10-week periods. If there some periods of time that overlap between either the 300 Store Level Co-Employees and/or the 75-Representative Opt-ins, then Defendants should be able to afford themselves some of the economy of producing ESI for the overlapping period.[6]

Plaintiffs further request that the Court advise Defendants that it will strictly preclude evidence proffered in connection with individuals for which it has not provided discovery. While Defendants describe the "volume" of this discovery as an undue burden, this burden is entirely of their own making. Defendants continue to insist on identifying 300 individuals—three times the

---

[6] Again, this protocol establishes a reciprocal limit on the scope of discovery. Plaintiffs' agreement to this protocol is with the understanding that the 10-week window is exhaustive. Defendants would be barred from the later production or use of any documentation falling outside this period, ensuring both parties are held to the same evidentiary constraints.

number of custodians requested by Plaintiffs—while simultaneously objecting to producing electronic discovery for those very individuals on the grounds of undue burden.

The store email boxes are a primary source of discoverable information because they were accessed and used daily by the Representative Plaintiffs and the Co-Employees, who Defendants intend to use as declarants and witnesses in this action.[7] These emails contain contemporaneous evidence of Store Managers' daily tasks, corporate directives, labor budget constraints and will serve as a source of proof for Plaintiffs to rebut Defendants' affirmative defenses, while demonstrating the interplay between the store employees and the Store Manager Representative Plaintiffs. The Court previously suggested a mutual limitation of 100 "Up-the-Chain" Supervisor custodians, and Plaintiffs have offered to accept this limitation here for the identified Co-Employees, Defendants have refused.

Defendants have failed to demonstrate undue burden during conferral. Under Rule 26(b)(1), Casey's must provide specific evidence, to prove that producing this ESI is disproportionate to the needs of the case. Defendants have provided no such evidence. Given that Casey's earned $3.4 billion in profit last year, the cost of running search terms for a limited group of 100 custodians for six 10-week periods is not unreasonable. The benefit of this discovery—ensuring a fair day's pay for 1,508 workers—far outweighs the minimal cost of production. To

---

[7] Plaintiffs have been working to try to find a way to make the discovery production that Defendants made from its Casey's Connection systems workable. However, to date Plaintiffs have found no solution. Plaintiffs had asked for a live license to access the materials natively; however Defendants rejected this proposal. In the Casey's Connection data produced, there is no way to associate the communications and data provided to particular opt-ins, stores, or to arrange these materials by geographic location or timeline, making this production of little to no value. Plaintiffs ask Defenats to produce an index of these materials relating them to the stores and Opt-Ins at issue and detailing the date of the record. If they will not agree to do so, then Plaintiffs renew their request for a license which is in Plaintiffs' estimation the most cost-effective way to produce these materials or prevent the need for an index.

the extent that Defendants would be required to do more, would be purely at its own election to not further amend its Initial Disclosures.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs Motion to Compel and consistent with recent conferral efforts and the Court's prior direction, order the following, that Defendant produce:

1) 10-weeks of ESI responsive to Plaintiffs' discovery requests (and limited by the search terms contained therein) for the 75-Representative Opt-ins as well for each of the approximately 300 Co-Employees identified by Defendants in paragraph 28 of Defendants' Fourth Supplemental Initial Disclosures and Exhibits B through DD. Each 10-week period (approximately one-quarter) will be selected by Plaintiffs from six years within the statutory period, totaling six 10-week periods;

2) ESI responsive to Plaintiffs' discovery requests (and limited by the search terms contained therein) for each Up-the-Chain Supervisor identified in paragraph 26 of Defendants' Fourth Supplemental Initial Disclosures. For every Up-the-Chain Supervisor identified Defendants will produce a 10-week period of responsive ESI (approximately one-quarter) to be selected by Plaintiffs from six years within the statutory period, totaling six 10-week periods; and

3) An index for its Casey's Connection production detailing for each produced record the stores and Opt-ins to which a record relates and detailing the date of each record.

Dated: December 23, 2025

Respectfully submitted,

*/s/ Rebecca S. Predovan*
Rebecca S. Predovan*
Marc S. Hepworth*
Charles Gershbaum*
David A. Roth*
**HEPWORTH, GERSHBAUM & ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
E-mail: mhepworth@hgrlawyers.com
E-mail: cgershbaum@hgrlawyers.com
E-mail: droth@hgrlawyers.com
E-mail: rpredovan@hgrlawyers.com

Michael J. Palitz*
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, NY 10022
Telephone: (800) 616-4000
Facsimile: (561) 447-8831
E-mail: mpalitz@shavitzlaw.com

Gregg I. Shavitz*
Camar R. Jones*
Loren B. Donnell*
**SHAVITZ LAW GROUP, P.A.**
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
E-mail: gshavitz@shavitzlaw.com
E-mail: cjones@shavitzlaw.com
E-mail: ldonnell@shavitzlaw.com

Richard E. Shevitz
Scott Gilchrist
**COHEN & MALAD, LLP**
One Indiana Square Suite 1400
Indianapolis, IN 46204
Phone: (317) 636-6481
Facsimile: (317) 636-2593
E-mail: rshevitz@cohenandmalad.com
E-mail: sgilchrist@cohenandmalad.com

*Attorneys for Plaintiffs and the FLSA Collective*

*admitted or to apply for admission *pro hac vice*

**CERTIFICATE OF CONFERRAL**

The parties conferred over the subject of this motion by telephone and via email a number of times. The parties also addressed these conferral efforts extensively in joint status reports filed with the Court including Dkt. Nos. 331 and 336 and at subsequent conferences with the Court. Defendants oppose Plaintiffs' Motion.

<u>s/Rebecca S. Predovan</u>  
Rebecca Predovan

## CERTIFICATE OF SERVICE

I certify that on December 23, 2025, I served a true copy of this document by all counsel of record via the Court's Electronic Case Filing system.

<u>s/Rebecca S. Predovan</u>  
Rebecca Predovan